LARSON, Respondent v. MECKLING FERTILIZER CO., INC.,
Appellant v. ELANCO PRODUCTS CO., Respondent

(243 N.W.2d 167)

(File No. 11734. Opinion filed June 23, 1976)

**Frank J. Brady**, of **Brady, Kabeiseman, Light & Reade**, and **Steve M. Johnson**, Legal Intern, Yankton, for plaintiff and respondent.

**Timothy J. Nimick**, of **Woods, Fuller, Shultz & Smith**, Sioux Falls, for defendant and third-party plaintiff and appellant.

**Robert C. Heege**, of **Davenport, Evans, Hurwitz & Smith**, Sioux Falls, for third-party defendant and respondent.

DUNN, Chief Justice.

This is an appeal from a jury verdict for the plaintiff in the Circuit Court of Clay County. Defendant maintains on appeal that

(1) the evidence was insufficient to submit the case to a jury, (2) the court erred in not limiting damages to the purchase price of the Treflan, and (3) assuming liability, the ultimate responsibility for the verdict should be on the third-party defendant Elanco Products Company. We affirm.

This is an action for breach of warranty. Plaintiff is a farmer and farms near Gayville, South Dakota. Defendant sells fertilizer and herbicides and is located in Meckling, South Dakota. Defendant is the distributor for southeast South Dakota of the products of the third-party defendant Elanco Products Company. One of the products made by Elanco and sold by defendant is Treflan, a pre-emergent herbicide.

In the spring of 1973, plaintiff was planning to plant soybeans on a particular 40-acre field. He was concerned about a possible infestation of weeds, particularly pigweed and firebush. Plaintiff went to defendant's store in Meckling and spoke to defendant's manager Clayton Campbell. Either plaintiff or Mr. Campbell mentioned that Treflan, made by Elanco Products, might do the job. Mr. Clayton related Treflan's guarantee and plaintiff said that he would buy it. Mr. Campbell read to plaintiff the label from a Treflan can which said that it would control pigweed and firebush. It was agreed that the Treflan would be mixed with a fertilizer which plaintiff also purchased from defendant. Mr. Campbell agreed that defendant would properly mix the Treflan with the fertilizer and apply it to plaintiff's field. Plaintiff's only responsibility was to see that the mixture was properly incorporated into the soil by discing and then cross-discing the field.

Elanco Products supplied warranty cards with the Treflan. Plaintiff filled out the warranty card and mailed it in.

Sometime after the mixture was applied and the soybeans were planted, plaintiff noticed a great deal of weeds growing in his soybean field. He notified Mr. Campbell and it was suggested that he apply the herbicide 2-4D to the field. This killed the weeds that had emerged, but it also killed the soybean plants which had emerged. Thereafter, more weeds began to appear in the field. As

a result of the weeds and the application of the 2-4D, the field yielded only 7½ bushels per acre, whereas a similar field farmed by plaintiff yielded between 25 and 25½ bushels of soybeans per acre.

Plaintiff commenced this action against defendant on February 11, 1974. Plaintiff alleged a breach of guarantee in the sale and application of the Treflan and fertilizer. Defendant brought Elanco Products into the action as a third-party defendant, alleging that all the warranties were made by Elanco and that defendant should be indemnified for any judgment plaintiff might receive against it. Trial was held on April 16, 1975. The jury found for the plaintiff and against the defendant for $4,480. The jury found against Elanco Products on the third-party complaint, but awarded defendant no damages. In response to a special interrogatory, the jury indicated that it found no defect in the product Treflan.

Defendant subsequently moved for judgment notwithstanding the verdict or, in the alternative, a new trial. This motion was denied by the trial court.

Defendant contends that the only express warranties which plaintiff relied upon were those made by the third-party defendant in its advertising and packaging materials. This being so, it says that the evidence was insufficient for two reasons. First, it argues it made no independent warranties and that it merely "parroted" the express warranties of Elanco Products. It concluded that it should not be bound by the warranties of the manufacturer since it was merely an intermediate seller.

After a careful examination of the evidence presented to the trial court, we cannot concur with defendant's analysis. The record reveals that Mr. Campbell not only passed on to plaintiff the written warranties of Elanco Products regarding the product Treflan but also assured plaintiff that defendant would properly mix the right amount of Treflan with the right amount of fertilizer and properly apply it to plaintiff's soybean field. Defendant's argument here assumed that the sale involved only the Treflan. In actuality, plaintiff purchased a mixture of Treflan and

fertilizer. Defendant expressly warranted that the mixture would be properly mixed and applied. This was defendant's guarantee, not Elanco Products'. The jury could properly find a breach of warranty in the mixing of the Treflan and fertilizer or the application of the mixture.*

■ Defendant's next argument is that no recovery for breach of warranty could be had because the jury found no defect in the Treflan. Again, the jury could have found that the Treflan was not defective, but that defendant's mixture was defective or that it was not properly applied. SDCL 57-4-26 provides that:

> "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

Recently in Swenson v. Chevron Chemical Company, 1975, 89 S.D. 497, 234 N.W.2d 38, we adopted the rule that:

> "In order to recover money damages for a breach of express warranty one must prove:
>
> '(1) an affirmation of fact or promise made by the seller to the buyer relating to the goods;
>
> (2) such affirmation of fact or promise became a part of the basis of the bargain;
>
> (3) that the injured party, in making the purchase, relied on the representations, affirmations of fact or promises;

---

\* Assuming, arguendo, that no express warranty was made by defendant regarding the herbicide-fertilizer mixture, liability could be predicated upon breach of an implied warranty of fitness for a particular purpose. SDCL 57-4-33 states as follows: "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under §§ 57-4-34 to 57-4-39, inclusive, an implied warranty that the goods shall be fit for such purpose."

(4) that the goods sold by the seller failed to comply with the promises or affirmations of fact made by the seller;

(5) that the buyer, because of such failure, was financially injured; and

(6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer.' General Supply and Equipment Co., Inc. v. Phillips, 1972, Tex.Civ.App., 490 S.W.2d 913." 234 N.W.2d at 42.

Here the question to be decided was whether the mixture sold and applied by defendant was defective in that it "failed to comply with the promises or affirmations of fact made by the seller." The jury made that factual determination and we find no reason to disturb it now.

■ One of the exhibits introduced by defendant during the trial was Elanco Products' warranty card with the attached postcard to be sent in by the purchaser of Treflan in order to register the guarantee. On the warranty card it states: "Elanco will refund the purchase price of Treflan under the following conditions * * *." Defendant maintains that this phrase limited damages to the purchase price of Treflan only, and that the court erred in allowing plaintiff to recover damages for the low soybean yield. There is some question as to whether the quoted language on the warranty card did limit consequential damages. However, we need not resolve this issue. The language on the warranty card dealt only with the Treflan. Defendant placed no limitation on its warranty that it would properly mix the Treflan with the fertilizer and apply it to the field. Therefore, we hold that the trial court properly instructed the jury on the measure of damages.

■ Defendant's last point is that even if liability exists, the ultimate responsibility lies with Elanco Products. Again we disagree. The jury found that the problem was with the mixture and its application rather than with the Treflan manufactured by Elanco Products.

■ Under this point, defendant also points out that the jury returned a verdict in favor of defendant against Elanco Products on the indemnity question, but awarded no damages. It suggests that this is evidence that the jury was confused in its deliberations. However, we note from the settled record that of the verdict forms submitted to the jury there was no form by which it could find in favor of Elanco Products on the third-party complaint. The jury did the only thing that it could do under the circumstances; the foreman signed the form verdict for the defendant against the third-party defendant, but put "$0" in the space for damages. Further, any doubt at all was resolved by the special interrogatory where the jury found that the product Treflan was not defective. We think that the jury acted consistently in light of the verdict forms which were submitted.

The judgment of the circuit court is affirmed.

WINANS and WOLLMAN and COLER, Justices, concur.